(No. 75548.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. WALTER L. THOMAS, Appellant.

*Opinion filed February 17, 1995.—Modified on denial of rehearing April 3, 1995.*

412

Michael Duffy, Mark Latham and Terry M. Hackett, of Gardner, Carton & Douglas, of Chicago, and Noreen A. Healy, law student, for appellant.

Roland W. Burris, Attorney General, of Springfield, and James E. Ryan, State's Attorney, of Wheaton (Rosalyn B. Kaplan, Solicitor General, and Arleen C. Anderson and Penelope Gainer, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Defendant was convicted by a Du Page County jury of murder, burglary, arson, and aggravated arson. That same jury found defendant eligible for the death penalty and sentenced him to death. This court affirmed defendant's convictions and sentences on direct appeal (*People v. Thomas* (1991), 137 Ill. 2d 500) and the United States Supreme Court declined review (*Thomas v. Illinois* (1991), 498 U.S. 1127, 112 L. Ed. 2d 1196, 111 S. Ct. 1092). Defendant, with the assistance of counsel, then sought post-conviction relief in the circuit court of Du Page County. (Ill. Rev. Stat. 1991, ch. 38, par. 122—1.) The trial court dismissed defendant's post-conviction claims on the State's motion and defendant appeals directly to this court. (134 Ill. 2d R. 651(a).) Defendant requests this court to remand this cause for an evidentiary hearing. We affirm.

## FACTS

The victim, Sophie Darlene Dudek, was found in her garage by the Aurora police department during their investigation of a fire in the garage. The victim had been stabbed in the neck and back and had been set on fire.

Defendant's employer, Donnie Moore, informed the police that defendant was the leader of a cleaning crew

that had cleaned Dudek's building on the day of the murder. Moore also told the police that defendant, a black man, was wearing a gray hooded sweat shirt on that day. A witness had seen a black man wearing a gray hooded sweat shirt walking in front of Dudek's garage several minutes before he saw smoke coming from the garage.

Police interrogated defendant about the murder and defendant twice orally confessed and signed a written confession. According to these confessions, defendant was in Dudek's garage to steal a bottle of perfume that Dudek kept in her garage. However, the bottle fell to the ground and Dudek entered the garage. As defendant attempted to flee, Dudek grabbed him from behind. Defendant removed a knife from his pocket and stabbed Dudek repeatedly. Defendant then poured perfume throughout the garage and on Dudek's body and set it on fire to conceal the murder.

## POST-CONVICTION PETITION

After defendant's convictions and sentences were affirmed, defendant filed an amended petition for post-conviction relief in the circuit court of Du Page County on July 21, 1992. Attached to the petition were, *inter alia*, the deposition of defense trial counsel, defendant's grade school and juvenile criminal records that contained psychological reports, recent psychological evaluations, and affidavits from friends and relatives.

The State moved to dismiss defendant's petition and a hearing was held. The trial court dismissed the petition without a full evidentiary hearing and defendant appealed directly to this court.

## ISSUES

Defendant raises eight issues on appeal and argues that the trial court erred in failing to grant an evidentiary hearing on the following issues: (1) trial counsel's

effectiveness at the guilt-innocence phase of trial, (2) trial counsel's effectiveness at sentencing, (3) the constitutionality of Illinois' death penalty statute and defense counsel's errors at sentencing, (4) the prosecution's racial remarks during sentencing, (5) denial of defendant's right to confront witnesses against him, (6) defense counsel's *per se* ineffectiveness due to her lack of experience in capital cases, (7) the misreading of jury verdict forms, and (8) the denial of a fair sentencing hearing.

## ANALYSIS

Before we address the issues presented for review, we note the following concerning review of a dismissal of a post-conviction petition. The defendant has the burden at a post-conviction hearing to establish a substantial deprivation of his rights under the United States Constitution or the Constitution of Illinois. (*People v. Griffin* (1985), 109 Ill. 2d 293, 303.) The trial court's determination on this matter will not be disturbed unless manifestly erroneous. (*Griffin*, 109 Ill. 2d at 303.) A defendant is not entitled to an evidentiary hearing as a matter of right. (Ill. Rev. Stat. 1991, ch. 38, par. 122—6; *People v. James* (1986), 111 Ill. 2d 283, 291.) Instead, an evidentiary hearing should be conducted where a substantial showing of a violation of constitutional rights has been made, supported by the record or affidavits. (*People v. Gaines* (1984), 105 Ill. 2d 79, 91-92.) We further note that issues already decided by a reviewing court are *res judicata* as to those issues, and any issue that could have been presented on direct appeal, but was not, is waived. *People v. Silagy* (1987), 116 Ill. 2d 357, 365.

### I

### Counsel's Effectiveness at Trial

Defendant's first allegation concerns the effective-

ness of trial defense counsel during the guilt/innocence phase of his trial. Defendant argues that counsel was ineffective in failing to (1) recognize the racial aspects of the case, (2) object to the State's characterization of stains on defendant's clothing as blood, (3) impeach a State witness with proof of the witness' previous arrests, and (4) request a mistrial after a witness testified that defendant confessed to his mother. None of these contentions have merit.

## 1. *Racial Aspects*

Defendant first contends that trial defense counsel was ineffective in failing to recognize the racial aspects of his case. Defendant, a black man, was convicted of killing a white woman by an all-white jury. Defense counsel stated in her deposition that she was not concerned with the racial aspect of defendant's case because she did not consider the case to have any racial overtones. Defense counsel did not believe that racial implications are present in any case when a black man is accused of killing a white woman, absent additional facts. However, at trial, defense counsel did question 8 of the 12 jurors about their views on race. Defendant argues that defense counsel's failure to recognize the racial aspect of his case as a fundamental issue with the case caused the entire defense strategy to be flawed at the guilt-innocence phase of trial. Defendant further argues that defense counsel was ineffective in failing to attempt to prevent the lack of minorities in the venire and for failing to formulate a strategy to attempt to minimize potential racial bias against him.

The standard for ineffective-assistance-of-counsel claims is well known. In order for defendant to succeed on such claim, he must show (1) that his counsel's performance fell below an objective standard of competence and (2) that but for counsel's unprofessional errors, the

result would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Hall* (1993), 157 Ill. 2d 324, 337.) At issue in a post-conviction proceeding dismissed without an evidentiary hearing is whether defendant has made a substantial showing that his sixth amendment right to effective assistance of counsel has been violated. On this issue, the trial court found: "The defense was not oblivious to the racial issue if it could be developed. It was not, however, present in the case."

Defendant, however, relies on United States Supreme Court decisions that recognize that racial implications may be present when a violent crime is committed by a member of one race against a member of another. (See *Rosales-Lopez v. United States* (1981), 451 U.S. 182, 68 L. Ed. 2d 22, 101 S. Ct. 1629; *Ham v. South Carolina* (1973), 409 U.S. 524, 35 L. Ed. 2d 46, 93 S. Ct. 848.) Defendant also notes that defense counsel failed to question four of the jurors about their attitudes toward race.

Before we address this argument, however, we address the State's claim that defendant has waived this issue for review because he failed to raise it on direct appeal. (*People v. Stewart* (1988), 123 Ill. 2d 368, 372.) The State also notes that defendant's trial and appellate counsel were not the same counsel. See *People v. Ford* (1981), 99 Ill. App. 3d 973, 976.

Concerning waiver, this court has recently stated:

"Failure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding. [Citation.] ***

\* \* \*

*** [T]he mere fact that support for a claim is contained in papers not in the trial record is largely immaterial. Reason to relax the bar occurs only when what is offered in the papers also explains why the claim it supports could not have been raised on direct appeal.

For example, the default may not preclude an

ineffective-assistance claim for what trial counsel allegedly ought to have done in presenting a defense. [Citations.] An ineffective-assistance claim based on what the record on direct appeal discloses counsel did, in fact, do is, of course, subject to the usual procedural default rule. [Citation.] But a claim based on what ought to have been done may depend on proof of matters which could not have been included in the record precisely because of the allegedly deficient representation." *People v. Erickson* (1994), 161 Ill. 2d 82, 87-88.

Defendant has not waived this issue for review. Defendant argues that trial defense counsel failed to recognize the racial implications of his case. Trial counsel admitted in her deposition that she did not believe racial implications are present in a case simply because a black man is accused of killing a white woman. The context of this admission explains why the claim it supports could not have been raised on direct appeal. The admission, taken from trial counsel's deposition, could not have been obtained or included in the trial record for defendant's direct appeal. Thus, defendant could not have raised this claim on direct appeal.

Nevertheless, we find defendant's argument to be without merit. Defendant has not made a substantial showing that trial counsel's alleged errors resulted in such prejudice as to affect the result of the guilt-innocence phase of trial. While the trial court dismissed this claim on other grounds, a reviewing court may affirm a trial court's decision on any grounds in the record. (See *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387; *People v. Thomas* (1958), 15 Ill. 2d 344, 348.) Moreover, courts may decide an ineffectiveness claim on only the prejudice component of the *Strickland* test without reaching the question of counsel's competence. *People v. Erickson* (1994), 161 Ill. 2d 82, 90.

The evidence of defendant's guilt was overwhelming. Defendant was placed at the crime scene and admit-

ted to several persons that he had previously been in the victim's garage to take items stored there. Defendant had a substance on his vest that an expert opined was type B blood, the same as the victim's and different from defendant's. Defendant also gave two oral confessions and a written confession, and confessed and apologized to his mother in the presence of a witness. Defendant has not made any showing that the outcome of the guilt-innocence phase of his trial would have been different had counsel developed a strategy to combat any racial aspects of this case.

## 2. *Blood Stains*

Defendant next argues that trial defense counsel was ineffective for failing (1) to object to the State's characterization of stains on defendant's clothing as blood and (2) to obtain a forensic expert to examine the stains. As the State notes, however, this issue is barred by the doctrines of *res judicata* and waiver. This court found the State's characterization of the stains as blood proper in defendant's direct appeal. (*Thomas*, 137 Ill. 2d at 527.) While defendant did not raise the characterization-of-stains argument in the form of ineffective assistance of counsel in his direct appeal, principles of *res judicata* still apply:

> "We recognize, as does apparently the State, the ease with which a petitioner may evade the operation of waiver and *res judicata* by couching his claims in the context of ineffective assistance. In that regard, we reiterate the rule that a petitioner cannot obtain relief under the Post-Conviction Hearing Act by simply 'rephrasing previously addressed issues in constitutional terms' in his petition. (*People v. Gaines* (1984), 105 Ill. 2d 79, 90; *Silagy*, 116 Ill. 2d at 371.) Such claims will be properly defeated by operation of waiver and *res judicata*." (*People v. Flores* (1992), 153 Ill. 2d 264, 277-78.)

Defendant cannot now argue that trial counsel was ineffective in failing to object to what this court has previ-

ously found to have been a proper characterization of evidence. We further note that defendant could have argued this claim as an ineffective-assistance-of-counsel claim in his direct appeal, but did not. As noted, defendant was represented by different counsel on appeal. Thus, this claim is also waived.

We further note that because the State's expert at trial opined that the stains were blood, though she could not be certain, defense counsel had no reason to object to the State's characterization of the evidence. Moreover, according to trial counsel's deposition, defendant informed her that the stains were indeed blood.

Defendant's argument concerning counsel's failure to hire an independent forensic expert to determine whether the stains were blood has been waived. This argument could have been raised in defendant's direct appeal but was not. Moreover, defendant informed her that the stains were blood. Thus, defense counsel had no reason to obtain a forensic expert to examine the stains.

### 3. *Failure to Impeach Moore*

Defendant next argues that trial defense counsel was ineffective for failing to impeach a "key witness" about an alleged arrest for a prior sexual assault. Defendant does not specify in his brief the witness to whom he refers, but defendant argued in his post-conviction petition that defense counsel "missed an important area of impeachment, namely that Moore's testimony was unreliable because he had been arrested previously for sexual assault." Attached to defendant's petition was a police report detailing Moore's death. In this report, the reporting officer noted that police sources informed him that Moore had been previously arrested for sexual offenses.

As the State argues, however, even if the information in the police report were true, and defense counsel had obtained Moore's arrest record, evidence of a wit-

ness' arrest is not admissible to discredit the witness. (See *People v. Norwood* (1973), 54 Ill. 2d 253, 257.) Thus, defense counsel could not have used this information to impeach Moore.

### 4. *Defendant's Confession to His Mother*

Defendant finally argues that trial defense counsel was ineffective for not requesting a mistrial during the guilt-innocence phase of trial when a lie detector operator testified that defendant admitted to his mother, "I did it." Defendant argues that during cross-examination of this witness, defense counsel impeached the witness with his testimony from a preliminary hearing. According to defendant, the witness' testimony at the preliminary hearing was that defendant told his mother, "I'm sorry."

Defendant has waived this issue for review, however, because it could have been presented on direct review. While post-conviction appellate counsel stated at oral argument that defendant also argued the ineffective assistance of appellate counsel, defendant did not argue this in his brief or post-conviction petition. Arguments raised for the first time during oral argument are waived for review. 134 Ill. 2d R. 341(e)(7); see also *People v. Stewart* (1988), 121 Ill. 2d 93, 105.

We further note that this issue is without merit. At trial, the witness testified on redirect examination that he stated in his report that defendant told his mother he did it. Defendant ignores this as well as the transcript from the preliminary hearing itself at which the following occurred:

"Q. [State's Attorney:] Were you then present for a conversation between the defendant and his mother regarding the death of Darlene Dudek?

A. [Witness:] Walter just said, 'I did it.'

Q. At the conclusion of that—

A. I'm sorry.

He said, 'I'm sorry.'
Q. At the conclusion of that, did you leave the room?
A. I walked out."

It thus appears that the witness testified at the preliminary hearing that defendant told his mother both "I did it" and "I'm sorry."

There is thus no merit to defendant's claims concerning trial counsel's effectiveness during the guilt-innocence phase.

## II

Defendant next argues that the trial court erred in dismissing his post-conviction petition without an evidentiary hearing on his claim that he was denied effective assistance of counsel at the sentencing phase of his trial. Defendant makes several assertions and argues that trial defense counsel failed to: (1) present any mitigating evidence or make a plea for mercy, (2) discover specific mitigating evidence that defendant suffered from an extreme mental or emotional disturbance and failed to have him examined by an independent expert, (3) discover other key mitigating evidence, and (4) develop a mitigation strategy. Defendant concludes that these errors, standing alone and cumulatively, establish a substantial violation of his constitutional rights.

1. *Presentation of Mitigating Evidence and Argument*

Defendant first argues that trial defense counsel failed to present any evidence in mitigation or to make a plea for mercy. Defendant argues that because defense counsel offered no evidence in mitigation, she ensured a death sentence for defendant. We first note that this issue has been waived. This argument could have been presented at defendant's direct appeal, but was not. We further note that this argument is without merit.

At defendant's sentencing hearing, defense counsel presented the testimony of several witnesses who testi-

fied about defendant's good character and qualities. Defendant's mother also testified that the police promised defendant he would not receive the death penalty if he confessed to the crime. Thus, defense counsel (1) argued defendant's good qualities as mitigation, and (2) pleaded for mercy by arguing that the jury should keep the police's alleged promise to defendant. Defendant's argument that defense counsel failed to present any mitigating evidence or make some plea for mercy is thus without basis in the record.

## 2. *Evidence of Defendant's Psychological Problems*

Defendant next argues that trial defense counsel was ineffective in failing to (1) present evidence that he was suffering from an extreme mental or emotional disturbance and (2) hire an independent expert to examine defendant. In his post-conviction petition, defendant presented evidence of his low IQ and psychological problems as a child. An evaluation by a psychologist for his post-conviction petition concluded that defendant suffered from post-traumatic stress disorder. Defendant argues that trial counsel's failure to discover this evidence allowed the State to argue that he should be sentenced to death because there was no evidence of any psychological problems.

In dismissing this claim without an evidentiary hearing, the trial court noted trial defense counsel's investigation into mitigation. Defense counsel hired a mitigation specialist to compile a report on defendant's life, and interviews were conducted with defendant, family members, and friends. The trial court noted that trial counsel's investigation revealed no history of psychiatric problems. Moreover, the mitigation information found was discussed with defendant. The trial court specifically found:

"Mention has been made of learning disabilities and Defendant's juvenile record. However, these matters do not reach mitigating records ***."

The trial court thus appears to have determined that defendant had not made a substantial showing of either prong of the *Strickland* test for ineffective assistance of counsel: defense counsel's performance was not less than competent and this evidence would not have affected the result of the sentencing hearing. We agree.

We first find that counsel's representation did not fall below an objective standard of reasonableness. Under the *Strickland* analysis for ineffective assistance of counsel, information given by defendant to defense counsel is critical in determining the reasonableness of counsel's investigation:

> "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. \*\*\* In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions. [Citation.]" *Strickland*, 466 U.S. at 691, 80 L. Ed. 2d at 695-96, 104 S. Ct. at 2066.

In the instant case, trial counsel stated in her deposition that she asked defendant, his mother, and defendant's girlfriend if he had any emotional disturbances. Defendant and his mother denied that he had suffered from any emotional disturbance, and defendant's girlfriend had not noticed any. Defendant also stated in his presentence investigation report that he "has never had any type of psychiatric or psychological testing, evaluation, [or] counseling." It is also important

to note that defense counsel stated in her deposition that defendant and his mother were very cooperative in his defense. Because of this, defense counsel stated that she had no reason to believe that defendant suffered from any emotional disturbances or should be examined by an independent expert.

Counsel's failure to investigate further into defendant's mental history was not deficient. Not only did defendant and his mother lie to defense counsel about defendant's previous mental history, the report prepared by defense counsel's mitigation specialist also did not reveal any such history. Moreover, defendant lied in his presentence investigation report about his history of psychological problems. It must be determined that defendant did not want the history of his mental difficulties to be used. Our conclusion is supported by Federal decisions that have discussed similar situations. See *Whitmore v. Lockhart* (8th Cir. 1993), 8 F.3d 614; *Russel v. Jones* (8th Cir. 1989), 886 F.2d 149; *Mulligan v. Kemp* (11th Cir. 1985), 771 F.2d 1436; *Cooley v. Nix* (8th Cir. 1984), 738 F.2d 345.

Moreover, we note, as did the trial court, that the evidence of which defendant complains, while containing mitigating evidence such as his low IQ and history of mental problems, also contained a great amount of aggravating evidence. We thus find that had this evidence been found and admitted, it would not have affected the outcome of defendant's sentencing hearing. We now briefly review this information.

Defendant attached to his post-conviction petition an affidavit from Michael Levin, Ph.D., that concluded the following: (1) the effects of psychological conditioning in defendant's childhood resulted in a diminished capacity for self-control in certain circumstances; (2) the effects of a dysfunctional and abusive childhood resulted in a diminished capacity to know right from wrong, pri-

marily in the area of aggression; (3) there is reason to believe that defendant suffers from a mental defect; (4) there is a high probability that defendant can be rehabilitated; and (5) defendant is not a danger to others while incarcerated. Dr. Levin noted in his report that defendant was beaten as a child with an extension cord by his mother, who waited until defendant was asleep before doing so. This, according to Dr. Levin, left defendant with a generalized anger toward women. Dr. Levin concluded: "It would appear Mr. Thomas reacted from Post Traumatic Stress Disorder [in killing the victim]." Dr. Levin also noted that defendant was bullied as a child and defendant's parents threatened him if he did not fight back. Though defendant was punished at school for fighting, his parents praised him for it.

The results of a neuropsychological test administered to defendant in 1992 for purposes of his post-conviction petition revealed that defendant suffers from mental slowing, which is an effect of nonspecific organic brain impairment. The report concludes that defendant "could have" sustained damage to his frontal lobes during adolescence from two head injuries.

Defendant's school and juvenile criminal records reveal that defendant was enrolled in classes for the educably mentally handicapped and had a "[l]ow level of achievement." Tests conducted in 1971 revealed a full scale IQ of 82, dull normal range of intelligence, and that defendant could have a schizoid personality.

Although the preceding evidence is of a mitigating nature, defendant's school and juvenile criminal records also contained the following evidence in aggravation. One report noted that defendant was "belligerent and hostile." Another noted that defendant had "present[ed] a belligerent attitude and hostile behavior in the classroom besides his academic problems." Moreover, defendant's juvenile criminal records note that he had

poor impulse control. And, "when [defendant] is irritated and frustrated, he may act out in explosive ways." Moreover, defendant "does not always tolerate the authorities well." A 1971 disposition noted that defendant needed very strict controls and supervision. Because of this, the State's Attorney and judge determined "it would be dangerous to allow this person to walk the street." Another clinical evaluation in 1971 concluded that defendant, "in his present condition, must be regarded as quite dangerous, specifically from a sexual point of view." A 1971 report also noted elements of conflicts with females and stated that "it is not surprising to notice that the alleged charges relate to various attacks on females."

Thus, while these records contain evidence in mitigation, namely defendant's low intelligence, they also portray defendant as a belligerent, dangerous person who could not be trusted on the street or with women. This evidence is even more aggravating when viewed together with defendant's six previous attacks on women, which were admitted at sentencing.

In 1969, defendant committed aggravated assault against a female school teacher when he accosted the victim with a knife and attempted to lead her down the hallway. Several months later, defendant beat another female teacher on the face with a table leg. Defendant was adjudicated a delinquent minor for these two offenses and received six months' probation.

In 1970, defendant accosted a female nurse at knifepoint, grabbing her wrists and leading her into a park. A little later in 1970, defendant again assaulted a female nurse with a knife. Defendant forced this nurse into her car at knifepoint and ordered her to remove her clothes. Defendant robbed this nurse. For these two crimes, defendant was adjudicated a delinquent ward of the court and was committed to the Department of Corrections, juvenile division, for 15 months.

Defendant denied committing these four offenses. Instead, he told a criminal sociologist, he only pleaded guilty because his lawyer told him to do so.

In June 1973, defendant repeatedly raped a female nurse, robbed her, and threatened to kill her. Later that year, defendant abducted another woman at knifepoint, ordered her into her car, went through her purse, and ordered her to remove her pants. Defendant was picked up by police after being observed following women in front of a hospital. After pleading guilty to armed robbery, deviate sexual assault, and rape for the first 1973 offense, and to attempted rape and attempted armed robbery for the second, defendant was sentenced to concurrent sentences of four to eight years.

Defendant denied committing any of these previous crimes after being arrested for Dudek's murder. Instead, defendant told the authorities that he took the blame for a group of friends. When confronted with the truth, however, defendant admitted committing the crimes but described them as a joke to prove his manhood. Defendant also said that he did not care about the victims at the time.

We conclude that the aggravating evidence against defendant was overwhelming. We thus find that defendant failed to make a substantial showing of any violation of his sixth amendment right to counsel on this issue.

### 3. *Other Evidence in Mitigation*

Defendant also argues that trial defense counsel failed to investigate and present other key mitigating facts. Of note here, defendant presented evidence in his post-trial motion that he was abused by his mother as a child and that his father was an alcoholic who would fight and scream daily with defendant's mother. Defendant argues that because of this failure by trial defense counsel, the State was able to argue at sentencing that

defendant should be sentenced to death because "[t]here is no evidence that [defendant] came from a bad home environment."

However, we note that the trial court in ruling on the post-conviction petition found that "[a]ll sources of information reveal that the Defendant came from a supportive family." Defendant stated in his presentence investigation report that he came from a "very closeknit and supportive family." Other records also revealed that defendant came from a supportive family. This finding is not against the manifest weight of the evidence.

Defendant also argues that trial defense counsel failed to present evidence that defendant was a loving father of a young daughter. However, trial defense counsel stated in her deposition that defendant did not want the mother of his daughter to testify. We find the trial court's decision was not against the manifest weight of the evidence.

We further note that the reasonable likelihood does not exist that the result of defendant's sentencing proceeding would have been different had this information been admitted. As noted previously, the evidence in aggravation against defendant was overwhelming.

While defendant compares his case to *People v. Perez* (1992), 148 Ill. 2d 168, where this court reversed and remanded for a new sentencing hearing, the two cases are not similar. *Perez* dealt with a recalcitrant defendant convicted of murder and sentenced to death. Defendant, on the other hand, was very cooperative in his defense, as was his mother. *Perez* also dealt with a defendant who had little evidence in aggravation and a great deal of evidence in mitigation which his attorney failed to introduce. Defendant, in the instant case, has a great deal of aggravating evidence that was overwhelming when compared to any evidence in mitigation.

## 4. *Mitigation Strategy*

Defendant also argues that trial defense counsel failed to develop a mitigation strategy. Defendant argues that defense counsel (1) made no opening statement during this phase of the trial, (2) failed to object to prejudicial remarks by the State, (3) spent little time preparing the mitigation witnesses, and (4) agreed with the State during closing arguments that the crimes committed by defendant were cruel and brutal acts.

However, the record is clear that defense counsel did have a mitigation strategy. Defense counsel portrayed defendant as someone other than a murderer who could commit such a vicious act. Counsel also pleaded with the jury to keep the promise the police allegedly made to defendant, that by admitting the crimes, defendant would not receive the death penalty. Defense counsel was given a difficult set of facts with which to work. Defendant committed a brutal crime against a woman and had previously committed six other brutal crimes against women. Defendant also lied about his psychological problems and family history. There is thus no merit to defendant's argument that counsel failed to develop a theory in mitigation.

## 5. *Cumulative Effect*

Defendant finally argues that the cumulative effect of defense counsel's errors requires a new sentencing hearing. Because we have found no errors, we disagree.

## III

Defendant next argues that the trial court erred by not holding an evidentiary hearing regarding his claim that the Illinois death penalty and the jury instructions under which he was sentenced to death are constitutionally defective on several grounds. In this argument, defendant relies on *United States ex rel. Free v. Peters* (N.D. Ill. 1992), 806 F. Supp. 705, *vacated* (7th Cir. 1993), 12 F.3d 700. The district court's opinion in *Free* relied

on a survey by Professor Hans Zeisel that found Illinois' jury instructions defective as vague and confusing. However, not only has the Seventh Circuit criticized the survey and *Free* opinion (see *Gacy v. Welborn* (7th Cir. 1993), 994 F.2d 305), so has this court (see *People v. Towns* (1993), 157 Ill. 2d 90, 115). Moreover, the *Free* opinion on which defendant relies has been reversed. (*Free v. Peters* (7th Cir. 1993), 12 F.3d 700.) We thus do not address this argument.

Defendant also contends that his jury instructions at sentencing were made more confusing by defense counsel's misstatement of the law to the jury, and further claims that the argument itself is reversible error as ineffective assistance of counsel. Defense counsel stated to the jury:

"Look at the whole picture. Deliberate over the whole picture and then reach your verdict. Your verdict must be unanimous and your verdict will not be questioned."

Defendant also argues that this mischaracterization was exacerbated when the State argued to the jury: "He gets the death penalty unless you find there is a mitigating factor that is sufficient to preclude it." Defendant argues that the State was speaking to the 12 jurors collectively when it used the word "you."

Because we do not find the instructions confusing, we do not address defendant's claim that defense counsel's argument made the instructions more confusing. We further find that defendant's argument concerning the ineffective assistance of counsel has been waived. Defendant could have raised this argument on direct appeal but did not. Defendant had separate counsel for his first appeal and does not argue in his briefs that appellate counsel on direct appeal was ineffective. Further, we note that while defense counsel's statement was a misstatement of the law, no reversible error occurred. The evidence introduced at sentencing was not closely balanced. Moreover, the trial court properly

instructed the jury at the aggravation and mitigation stage. See *People v. Fields* (1990), 135 Ill. 2d 18, 69-70.

## IV

Defendant next argues that the trial court erred by not holding an evidentiary hearing concerning his claim that the prosecutor made racial remarks during the sentencing phase of his trial. Defendant cites the following remarks:

"Detective Langston, one of the things that he will tell you, he questioned Walter Thomas as regarding the prior sexual offenses and he told Walter Thomas, one or both of these cases with young women, just like Nancy Tarnowski and both of those cases young *white women* and both those cases involved knives." (Emphasis added.)

Defendant also argues that the State further inflamed racial passions and prejudices of the all-white jury by having witnesses read aloud various documents that described defendant as "Negro," "black" and "colored."

This argument, however, is barred as *res judicata*. Defendant raised the same issue in his direct appeal. This court found the remarks " 'unnecessary and potentially offensive,' but *** not 'intended to incite racial prejudice,' nor [having] that effect." (*Thomas*, 137 Ill. 2d at 543, quoting *People v. Johnson* (1986), 114 Ill. 2d 170, 199.) This court noted that (1) the statement was isolated, (2) the jury could plainly see that one of the victims was white and that defendant was black, and (3) the jury was instructed to consider the evidence, not the prosecutor's remarks, and that it could not be prejudiced by race. This court found the statement could not have changed the outcome of the case. *Thomas*, 137 Ill. 2d at 543-44.

Defendant, however, argues that the issue is not *res judicata* because several new factors were learned only after trial. First, defendant argues that the postconviction petition reveals many factual instances of ineffective assistance of counsel at trial and sentencing

arising out of trial defense counsel's failure to recognize the racial aspects of this case. Next, defendant argues that the fact that the jury was all white was revealed only in the post-conviction petition. Defendant also notes that at least one member of this court in his direct appeal, the dissent, believed that the four jurors not questioned about their views on race were not white.

However, we do not believe these facts affect this court's previous holding, which was that the remarks did not affect the outcome of the sentencing hearing. While the dissent in defendant's direct appeal may have believed that four of the jurors were not white, the majority did not mention this as a reason for its holding. Thus, the holding on this issue in the first appeal is not affected by defendant's argument.

## V

Defendant next argues that the trial court erred in failing to hold an evidentiary hearing on defendant's claim that he was denied the right to confront witnesses against him at his sentencing hearing. We find this issue waived, however, as it could have been raised on direct review. Defendant does not offer any reason why he could not have presented this issue on direct review.

## VI

Defendant next argues that the trial court erred in failing to hold an evidentiary hearing regarding his claim that trial defense counsel was ineffective *per se* because she had no experience defending a defendant in a capital case. We disagree.

While trial defense counsel did not have experience with capital cases, she was an experienced defense attorney who had attended capital seminars and read death penalty publications. Moreover, the trial was second chaired by another experienced defense attorney who had previous capital experience.

## VII

Defendant next argues that the trial court erred by not holding an evidentiary hearing regarding his claim that the misreading of jury verdict forms denied him a fair sentencing hearing. Defendant has waived this issue for review, as it could have been presented in his direct appeal. Defendant offers no reason why the issue could not have been brought at that time.

## VIII

Defendant finally argues that the trial court erred in not holding an evidentiary hearing regarding his claim that the deliberation by the jury without hearing evidence concerning his background and psychological state denied him a fair sentencing hearing. This argument is a rewording of defendant's previous argument and is without merit.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed. The clerk of this court is directed to enter an order setting Wednesday, May 17, 1995, as the date on which the sentence of death, entered by the circuit court of Du Page County, shall be carried out. Defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1991, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*