2025 IL App (1st) 230173-U

No. 1-23-0173

Order filed February 5, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 6475-02 |
| | ) | |
| MICHAEL McINTOSH, | ) | Honorable |
| | ) | Brian Flaherty, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The second-stage dismissal of McIntosh's postconviction petition is affirmed where his claim is barred by the doctrine of *res judicata*.

¶ 2     Defendant Michael McIntosh appeals from a circuit court order granting the State's motion to dismiss his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). On appeal, McIntosh contends that his petition should not have been dismissed where he made a substantial showing that trial counsel was ineffective for refusing his

request to represent himself and failing to inform the trial court of his desire to represent himself. For the reasons that follow, we affirm.[1]

¶ 3                                         I. BACKGROUND

¶ 4     McIntosh's convictions arose from a February 29, 2004, armed robbery of a currency exchange. Following a 2008 jury trial, McIntosh was found guilty of aggravated discharge of a firearm, armed robbery, aggravated unlawful use of a weapon, and aggravated unlawful restraint. The trial court subsequently sentenced him to concurrent prison terms of 35, 30, 7, and 5 years, respectively. A full recitation of the underlying facts of the case is set forth in our order affirming McIntosh's convictions on direct appeal (*People v. McIntosh*, 2011 IL App (1st) 090091-U).

¶ 5     The record reveals that McIntosh's initial attorney was granted leave to withdraw as counsel in September 2005. On November 18, 2005, McIntosh told the trial court that he would retain a new private attorney by the following week. On December 19, 2005, McIntosh appeared *pro se* and agreed with the State's assertion that "they" had hired an attorney and were asking for a date in January.

¶ 6     When the case was called on January 23, 2006, McIntosh again appeared *pro se*. He told the court, "As to the reason I don't have a new lawyer, because I have two co-defendants and I was getting screwed out of a lot of money, that is why I didn't have my lawyer here." McIntosh stated that his family was consulting an attorney, someone in the courtroom gave the trial court the attorney's name, and the court continued the case.

¶ 7     On the next court date, the office of the Cook County Public Defender appeared for McIntosh, who was not present in court. On February 22, 2006, McIntosh was present in court and

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

informed the court that he had yet to secure private counsel. The court appointed the public defender. On June 30, 2006, an assistant public defender appeared and indicated the case had been assigned to her that day.

¶ 8 On September 22, 2006, the assistant public defender informed the court that McIntosh was requesting an order that he be allowed out of his cell for one hour per day to use the phone. McIntosh explained, "It's so I can contact a lawyer [and] get some of these matters out of the way. *** It's access to the phone so I could get in touch with my attorney, so I can use the phone to call her and call some more[.]" The court signed the requested order. On July 23, 2007, counsel asked for a status date, indicating that McIntosh's family was present in court and "[w]e're talking about possibly retaining [a] private attorney, Judge."

¶ 9 On October 2, 2007, McIntosh told the court, "I want to file a motion on my own, about ineffective assistance of counsel, conflicts of interest." McIntosh stated that he had filed a complaint with the Attorney Registration & Disciplinary Commission (ARDC) but had not heard back. Counsel stated that she had received communication from the ARDC that a complaint had been filed but no further investigation was required, as the complaint was closed. McIntosh informed the court that he had a conflict of interest with counsel, that counsel had only "been there 15 minutes," that he "never" talked to counsel, and that he had arguments with her.

¶ 10 When the court asked McIntosh what he was looking for, he responded, "I am looking to be represented fair, with a fair lawyer, someone that is going to represent me. I want to be represented like anyone else." During further conversation with the court, McIntosh stated, "I want to be represented right," and, "I just want to be represented right like anyone else." Counsel informed the court that the office of the Cook County Public Defender would not appoint someone else to represent McIntosh, stating, "[s]o unless he can retain private counsel, I believe that his

only option is to represent himself." McIntosh responded, "[w]ell, if I can get what I can get to get private counsel, I will do that."

¶ 11   The court asked McIntosh what pace of proceedings would satisfy him. The following exchange ensued:

"MCINTOSH: No. I am satisfied if I be represented right. That's all I am asking you.

THE COURT: This is your attorney, so let's move on to the next point. We will set this matter for trial.

MCINTOSH: How are you going to set it for trial and she is not representing me right?

THE COURT: She is. We are going to set it for trial.

MCINTOSH: I am going to have to take it on my own hands, if I got to finish doing what I got to do.

THE COURT: What date, is this going to be a bench or a jury? [McIntosh], it is up to you.

MCINTOSH: I am representing myself now, you are asking me that?

THE COURT: No, that is your choice. You are not representing yourself.

MCINTOSH: You are asking me what I am going to take, and I don't have no one to represent me.

[DEFENSE COUNSEL]: I am handling your trial. Judge, it will be a jury."

¶ 12   McIntosh's jury trial commenced on September 29, 2008. Prior to jury selection, the court admonished McIntosh regarding his jury waiver. During their exchange, McIntosh agreed, among other things, that he had had an opportunity to talk with counsel and had received counsel's advice.

¶ 13 The jury found McIntosh guilty of aggravated discharge of a firearm, armed robbery, aggravated unlawful use of a weapon, and aggravated unlawful restraint, and the trial court subsequently sentenced McIntosh.

¶ 14 On direct appeal, McIntosh raised six contentions. Relevant here, he contended that he was denied his constitutional right to self-representation. We disagreed, stating, in total, as follows:

> "In the instant case, we reject defendant's argument that the trial court denied him his right to self-representation. Our review of the record shows that the defendant did not clearly and unequivocally invoke his right to represent himself. Moreover, the defendant's conduct subsequent to his request indicated that he vacillated in the request, as he later abandoned the request and acquiesced to be represented by defense counsel. Thus, any request for self-representation was clearly waived." *McIntosh*, 2011 IL App (1st) 090091-U, ¶ 67.

¶ 15 On April 6, 2012, McIntosh filed an initial *pro se* postconviction petition, raising a number of claims. Among them, McIntosh claimed that he was denied the effective assistance of trial counsel where counsel denied him "his fundamental right to represent himself *pro se* in this case." He asserted that counsel "would not allow him to represent himself," specifying, "I explained to my trial attorney that I wanted to represent myself. She told me no, that she was going to represent me rather [*sic*] I like it or not." He also stated that, after he told counsel he wanted to proceed *pro se*, "she denied the petitioner['s] request and the trial counsel wouldn't bring this information to the trial court['s] attention, about the petitioner wanted to proceed *pro se*." He argued that the record supported his claim and, in an attached affidavit, averred that counsel, on October 2, 2007, informed the trial court that she was his attorney and he was electing to have a jury trial.

¶ 16    The circuit court docketed McIntosh's petition on February 1, 2013. On February 18, 2022, appointed counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), stating, *inter alia*, that she was not filing an amended petition because the *pro se* petition adequately set forth McIntosh's claims of deprivation of his constitutional rights. On March 15, 2022, the State filed a motion to dismiss.

¶ 17    Following a hearing where the parties rested on their written arguments, the circuit court granted the motion to dismiss on December 16, 2022. The court stated, in relevant part, as follows:

> "Defendant next claims that trial counsel was ineffective for failure to allow defendant to represent himself at trial. This was addressed in the Appellate Court whether or not a trial judge denied defendant [*sic*] rights to self-representation. The Appellate Court determined that the trial judge did not error [*sic*] regarding self-representation. It is not up to the trial attorney, by the way, his attorney, to determine whether or not defendant should act as his own attorney. Defendant attempts to rephrase his failed Appellate Court argument. Again, defendant's argument has nowhere [*sic*] and fails both prongs of the *Strickland* analysis."

¶ 18    McIntosh filed an untimely notice of appeal on January 18, 2023. He thereafter filed a motion for a supervisory order in the Illinois Supreme Court, which granted his motion and directed this court to treat the notice of appeal as a properly perfected appeal.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, McIntosh contends that his petition should not have been dismissed where he made a substantial showing that trial counsel was ineffective where she refused his attempts to represent himself and failed to inform the trial court of his desire to represent himself. He argues that, because counsel blocked him from exercising his right to self-representation, her conduct was

objectively unreasonable. He argues he was prejudiced since, absent her unreasonable conduct, he would have waived counsel and represented himself.

¶ 21    The Act provides a three-stage procedure by which defendants can assert a substantial denial of their rights under either the federal or the state constitution. See 725 ILCS 5/122-1 *et seq.* (West 2012). Petitions that are not summarily dismissed at first-stage proceedings advance to the second stage, where counsel is appointed, and where the State may answer the petition or move to dismiss it. *People v. Domagala*, 2013 IL 113688, ¶ 33. If a petition survives the second stage, then a third-stage evidentiary hearing is held. *Id.* ¶ 34.

¶ 22    The purpose of the postconviction process is to permit inquiry into constitutional issues arising from the original conviction and sentence that were not, and could not have been, raised and resolved on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues that were raised and decided on direct appeal are precluded by the doctrine of *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* A postconviction petition is subject to dismissal on grounds of *res judicata* or forfeiture at both the first and second stages. *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005). The circuit court dismissed McIntosh's petition at the second stage of proceedings. We review a second-stage dismissal *de novo*. *People v. Huff*, 2024 IL 128492, ¶ 13.

¶ 23    The State argues that McIntosh's contentions are barred by *res judicata*, as they are merely an attempt to relitigate his direct appeal claim that he was denied his right to represent himself. We agree.

¶ 24    On direct appeal, McIntosh contended that he was denied his constitutional right to self-representation by the trial court. We rejected that contention, finding that any request was waived where McIntosh did not clearly and unequivocally invoke his right to represent himself and where

his conduct "indicated that he vacillated in the request, as he later abandoned the request and acquiesced to be represented by defense counsel." *McIntosh*, 2011 IL App (1st) 090091-U, ¶ 67.

¶ 25   McIntosh now claims that trial counsel, as opposed to the trial court, prevented him from exercising his right to proceed *pro se*. We are mindful that, in his direct appeal, McIntosh did not raise his violation-of-the-right-to-self-representation argument in the form of ineffective assistance of counsel. Nevertheless, principles of *res judicata* still apply. *People v. Thomas*, 164 Ill. 2d 410, 420 (1995); *People v. Adams*, 338 Ill. App. 3d 471, 476 (2003). "A post-conviction petitioner may not avoid the bar of *res judicata* simply by rephrasing issues previously addressed on direct appeal." *People v. Simms*, 192 Ill. 2d 348, 407 (2000). More specifically, a defendant may not evade the operation of *res judicata* by couching a previously decided claim in the context of ineffective assistance. *Thomas*, 164 Ill. 2d at 420. Such claims are properly defeated by operation of *res judicata*. *Id.*

¶ 26   The issue of whether McIntosh was denied his right to self-representation was decided on direct appeal. McIntosh cannot now argue that, due to ineffective assistance of counsel, he suffered a violation of his right to self-representation. McIntosh asserts in his reply brief that these two claims are not the same, and thus not subject to the operation of *res judicata*, as he is currently challenging counsel's performance, rather than the trial court's conduct. However, McIntosh has failed to cite any case law where a court has found a trial attorney to be ineffective in this manner, and our research has revealed none.

¶ 27   Every case McIntosh cites in support of his argument involves the conduct of the trial court, not trial counsel. McIntosh argues that it "defies logic" not to extend the holding of these cases to encompass counsel's conduct as well as that of the trial court. In his reply brief, he relies on American Bar Association standards to argue that his counsel's performance was objectively

unreasonable. He also acknowledges that the question of what would constitute prejudice "in relation to an ineffective assistance of counsel claim premised on counsel's usurping of a defendant's right to self-representation is apparently an issue of first impression."

¶ 28　The absence of any prior cases finding that (1) counsel is required to perform in the way McIntosh is conceptualizing, (2) that an attorney can somehow violate a defendant's right to self-representation, or (3) that a defendant suffers some form of prejudice as a result, indicates that McIntosh's claims are not actually new, distinct claims. Rather, they are the same violation-of-the-right-to-self-representation claim that was decided on direct appeal, now couched in terms of ineffective assistance of counsel. As such, the issue is barred by the doctrine of *res judicata* (see *Thomas*, 164 Ill. 2d at 420), and second-stage dismissal of McIntosh's petition was proper.

¶ 29　Given our disposition, we need not address McIntosh's alternative contention that his postconviction counsel was unreasonable in failing to make necessary amendments to the *pro se* petition.

¶ 30　　　　　　　　　　　　III. CONCLUSION

¶ 31　For the reasons explained above, we affirm the judgment of the circuit court.

¶ 32　Affirmed.