(No. 75825.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES B. ASHFORD, Appellant.

*Opinion filed November 30, 1995.—Rehearing denied January 29, 1996.*

496

Michael B. Metnick and Richard D. Frazier, of Metnick, Wise, Cherry & Frazier, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Rosalyn B. Kaplan, Acting Solicitor General, and Arleen C. Anderson and Nancy L. Grauer, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

After a bench trial in Sangamon County, defendant was convicted of four counts of murder (Ill. Rev. Stat.

1985, ch. 38, par. 9—1(a)(2)), four counts of felony murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(3)), and one count of armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2). At sentencing, the trial judge found defendant eligible for the death penalty and sentenced defendant to death. On direct appeal, this court affirmed defendant's convictions and death sentence. (*People v. Ashford* (1988), 121 Ill. 2d 55.) Subsequently, defendant filed a petition for post-conviction relief in Sangamon County. (See Ill. Rev. Stat. 1987, ch. 38, par. 122—1 *et seq.*) The circuit court dismissed the post-conviction petition without an evidentiary hearing. Defendant appeals the dismissal of the post-conviction petition (134 Ill. 2d R. 651(a)), seeking a new sentencing hearing or, in the alternative, remand for an evidentiary hearing. We affirm.

## FACTS

The evidence supporting the convictions and sentence was thoroughly discussed on direct appeal (*Ashford*, 121 Ill. 2d 55), and we will only summarize the evidence for the purpose of this post-conviction proceeding. On June 12, 1985, Ellen Michelle Lawson went to purchase some marijuana at the home of Lonnie Davis in Springfield. She was invited inside. At that time, four individuals were present in the home: Lonnie Davis, Bernard Bowen, Annette Singleton, and Janetta Leaks. At trial, Lawson testified that she saw a substantial amount of white powder (which she thought was cocaine) and cash in Davis' home.

After Lawson arrived, the doorbell rang and Bernard Bowen answered the door. Bowen briefly conversed with another individual, and Lawson recognized the individual's voice as that of accomplice Gary Jones. Lawson heard gunshots and ran into the basement to hide. Lawson also heard Annette Singleton plead with someone not to kill her and then heard more gunshots. While

hiding in the basement, Lawson heard someone come down the stairs leading to the basement. Lawson then heard two individuals, one in the basement and one upstairs, call out to each other. She recognized these two voices as those of defendant and Gary Jones. After defendant and Jones left, Lawson emerged from her hiding place, saw the bodies of the four victims, and noticed that the cocaine and cash were missing. A forensic pathologist later testified that each victim had been shot four times, except Janetta Leaks, who had been shot twice. Each victim had been shot once in the head.

Anthony and Gregory Phillips also testified. They stated that, on the evening of the murders, defendant and Jones came to their home with a bag containing white powder. Defendant told Gregory Phillips that defendant and Jones had been involved in a "shoot-out" at Davis' home. On June 14, defendant asked Gregory Phillips to dispose of a sack for him, and Phillips buried the sack in his backyard. The police later recovered the sack and found two handguns inside that had been purchased by defendant. The police conducted ballistics tests and were able to link the two handguns to the bullets that caused the deaths of the victims. Defendant's fingerprint was found on the handgun that had been used to inflict most of the fatal wounds.

Several days after the shootings, defendant visited some friends: Janet Walker, Ramona Walker, and Mack Alexander. Essentially, the testimony of these three individuals was the same with respect to this visit. They stated that they had shared cocaine with defendant on June 15, 1985. At that time, defendant told them that defendant and Jones had gone to Davis' home on June 12 and killed the four victims. Defendant also told them that one of the victims had begged defendant not to shoot her. Defendant shot her because she called out his name. According to Janet Walker, defendant stated that

he shot one of the victims again after noticing that the victim's leg had moved. According to Mack Alexander, defendant stated that he shot each victim in the head because he did not want to leave any witnesses. Alexander also testified that defendant had shown him a bag containing a substantial amount of cocaine and money on a separate occasion.

After hearing all the evidence, the circuit court found defendant guilty on all counts. The court then determined that defendant was eligible for the death penalty. The court found that defendant had inflicted fatal wounds in the four killings and was eligible under the multiple-murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(3)) and murder-in-the-course-of-a-felony (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)) eligibility factors.

Next, the court considered the factors in aggravation and in mitigation to determine if the death penalty should be imposed. In aggravation, the State relied primarily on the evidence presented during the guilt phase. The State argued that the premeditated and heinous nature of the four murders constituted aggravating evidence. The State also noted that defendant had four previous misdemeanor convictions: reckless conduct, battery, unlawful use of a weapon, and criminal trespass to land.

Defense trial counsel presented no mitigating evidence. Trial counsel argued that the alternative to the death sentence was a sentence of natural life imprisonment. Under this alternative, defendant would have no chance of parole and would be no threat to society. Counsel also argued that defendant's four misdemeanor convictions could not be considered a significant criminal history because the convictions were not felony convictions.

After hearing the aggravating and mitigating evidence, the circuit court sentenced defendant to death. It

noted that the State had presented persuasive evidence showing that defendant planned to commit armed robbery. The court further noted the premeditated and merciless nature of the murders:

"It seems to me that this is a crime that is unprecedented in the mind of the Court, at least, in this area with regard to its magnitude, number of people killed, the manner in which they were killed, the heartless shooting of two young women, one nineteen and the other twenty-three. It may be summarized as a mass killing of such a magnitude as I say the Court doesn't recall anything like it in this county. It is ruthless, the pettiness of killing of two young women, and two men in their mid-twenties; ruthless termination of all persons present or at least known to be present. The evidence shows that Ms. Lawson, Miss Lawson's presence was not known, which undoubtedly resulted in her being alive today."

The circuit court considered defendant's lack of significant criminal history in imposing sentence. The court stated that, to the extent this lack of significant criminal history was mitigating, it was not sufficient to preclude the death penalty given the magnitude of the offenses.

## POST-CONVICTION PETITION

The principles that apply to post-conviction proceedings are well settled. A post-conviction proceeding is not an appeal of a defendant's convictions and sentence, and a defendant cannot merely allege that errors occurred at trial. (*People v. Kokoraleis* (1994), 159 Ill. 2d 325, 328; *People v. Mahaffey* (1995), 165 Ill. 2d 445, 452.) In order to succeed in a post-conviction proceeding, defendant must allege that constitutional violations occurred at trial. (*People v. Thompkins* (1994), 161 Ill. 2d 148, 157; *People v. Hall* (1993), 157 Ill. 2d 324, 330.) During the proceeding, defendant bears the burden of establishing a substantial deprivation of his constitutional rights. (*People v. Albanese* (1988), 125 Ill. 2d 100,

104-05; *Hall*, 157 Ill. 2d at 331.) The circuit court's determinations will not be disturbed unless manifestly erroneous. *People v. Griffin* (1985), 109 Ill. 2d 293, 303; *People v. Jones* (1993), 155 Ill. 2d 357, 363.

We note that the circuit court dismissed the post-conviction petition without an evidentiary hearing. A defendant is not automatically entitled to an evidentiary hearing on his post-conviction petition. (Ill. Rev. Stat. 1987, ch. 38, par. 122—6; *People v. Thomas* (1995), 164 Ill. 2d 410, 416.) An evidentiary hearing is warranted only if the defendant has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. *People v. Gaines* (1984), 105 Ill. 2d 79, 91-92; *People v. Spreitzer* (1991), 143 Ill. 2d 210, 218.

In this case, defendant does not challenge the propriety of his convictions. Instead, defendant alleges that constitutional errors arose at the sentencing stage. Specifically, defendant claims that: (1) his trial counsel provided ineffective assistance of counsel because counsel did not investigate and present mitigating evidence; and (2) the circuit court improperly considered an *ex parte* memorandum from a Sangamon County sheriff's department officer, recommending that defendant wear physical restraints in the courtroom.

### I. Ineffective Assistance of Counsel

Defendant's first argument on appeal is that trial counsel was ineffective during sentencing because counsel failed to investigate and present mitigating evidence. In support, defendant relies on grand jury transcripts, police reports, the deposition of trial counsel, and the affidavit of a clinical psychologist. Defendant claims that he was under the influence of drugs at the time of the shootings and was hallucinating. Defendant argues that trial counsel did not investigate potential drug abuse evidence and this failure was un-

reasonable. According to defendant, if trial counsel had presented this mitigating evidence, it is reasonably likely that defendant would not have been sentenced to death.

In response, the State initially claims that the issue is waived because defendant could have raised it on direct appeal. We disagree. A defendant's claim of ineffective assistance is not waived when a defendant relies on matters that were not and could not be included in the record on direct appeal. (*People v. Holman* (1995), 164 Ill. 2d 356, 362; *People v. Erickson* (1994), 161 Ill. 2d 82, 87-88.) In the instant case, defendant has introduced trial counsel's deposition to show why trial counsel failed to present mitigating evidence and to suggest that this failure was unreasonable. Defendant also relies on other materials to show what mitigating evidence could have been presented. These materials were outside of the record on direct appeal. Accordingly, the issue has not been waived and we address the merits.

To show ineffective assistance of counsel, defendant must satisfy the two prongs of the *Strickland* test. (See *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Under *Strickland*, a defendant must show (1) that trial counsel's representation was deficient and (2) that this deficient performance resulted in prejudice to defendant. If defendant fails to make a sufficient showing of either prong of the *Strickland* test, this court need not address the remaining prong. (*Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069; *People v. Eddmonds* (1991), 143 Ill. 2d 501, 511-12.) Thus, if defendant fails to show prejudice, we need not address the adequacy of trial counsel's performance. (*Erickson*, 161 Ill. 2d at 90.) In addressing prejudice, this court determines whether the result of sentencing would reasonably likely have been different if the potential mitigating evidence had been included. *Strickland*, 466

U.S. at 695-96, 80 L. Ed. 2d at 698-99, 104 S. Ct. at 2069; *Erickson*, 161 Ill. 2d at 90.

We briefly summarize the materials offered to support defendant's claim of ineffective assistance. One of these materials is the deposition of trial counsel. Defendant submits this deposition to satisfy the first prong of the *Strickland* test. Defendant introduces the deposition to show why trial counsel failed to present mitigating evidence and to show that this failure constitutes deficient performance. In the deposition, counsel states that he presented no mitigating evidence at sentencing because defendant did not want any presented. Defendant argues that counsel had an obligation to investigate potential drug abuse evidence in spite of these protests and failed to do so. See *People v. Perez* (1992), 148 Ill. 2d 168 (counsel's performance was deficient where he failed to investigate available mitigating evidence and advise the defendant of the value of the mitigating evidence after the defendant stated that he did not want any presented).

Defendant also offers other materials to satisfy the second prong of the *Strickland* test and to show the mitigating evidence that counsel could have presented. Specifically, defendant has submitted grand jury transcripts, police reports, and the affidavit of a clinical psychologist to show prejudice. Defendant argues that these materials show that he was hallucinating and under the influence of drugs at the time of the killings.

Defendant relies on statements made by Janet Walker, Ramona Walker, and Mack Alexander during the grand jury proceedings. These individuals stated that they shared cocaine with defendant on June 15, three days after the shootings. They stated that, at that time, defendant seemed paranoid and disturbed. Mack Alexander and Ramona Walker also stated that defendant had used cocaine on other unrelated occasions.

Most of these statements of general cocaine use do not involve defendant's actions on June 12, when the crimes were committed.

Other statements, however, do indicate that defendant had used drugs just before the commission of the crimes. During the grand jury proceeding and at trial, Mack Alexander stated that defendant had used cocaine just before the shootings. In addition, defendant points to police reports that contain several statements made by defendant's accomplice, Gary Jones. Jones stated several times that defendant had alternated use of cocaine and Valium just before the commission of the crimes. Neither Alexander nor Jones stated that defendant was hallucinating. In fact, Alexander opined several times that defendant knew what he was doing when he committed the crimes.

Defendant has also introduced an affidavit by a clinical psychologist, who never met defendant but who reviewed the post-conviction petition and accompanying materials. The psychologist, William Kip Hillman, concluded, based on this record, that defendant was addicted to cocaine at the time of the murders. The psychologist recommended that defendant be evaluated to determine the extent that defendant was emotionally disturbed at the time of the crimes and the degree to which defendant could cooperate with post-conviction counsel. This affidavit was initially introduced to show that defendant's fitness to cooperate with post-conviction counsel was in question. Based on his limited consideration of the record, Hillman could not conclude that defendant was hallucinating or suffering from extreme emotional disturbance at the time of the murders.

We now resolve defendant's ineffective-assistance claim under the prejudice prong of *Strickland*. Even if we assume that trial counsel's performance was deficient, we cannot conclude that the defendant suffered

prejudice as a result of this alleged deficiency. In evaluating prejudice when a defendant challenges a death sentence, "the question is whether there is a reasonable probability that, absent the errors, the sentencer *** would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.) In assessing prejudice, we consider both the evidence presented at sentencing and the proposed mitigating evidence. We evaluate prejudice based on the totality of the aggravating and mitigating evidence. (*People v. Coleman* (1995), 168 Ill. 2d 509, 536; *People v. Caballero* (1992), 152 Ill. 2d 347, 365-67.) Given the evidence in this case, we conclude that there is no reasonable probability that the omitted evidence would have changed the outcome.

Some of the proposed evidence would show that defendant had used drugs just before the crimes. Much of the proposed evidence, however, indicates that defendant used cocaine after the crimes. Much of the proposed evidence establishes only that defendant generally used cocaine. This potential testimony may be more aggravating than it is mitigating. (*People v. Jones* (1991), 144 Ill. 2d 242 (finding no prejudice where the defendant alleged that his counsel was ineffective for failing to investigate and present mitigating evidence of alcohol and drug abuse).) The proposed evidence does not indicate hallucinations or extreme emotional disturbance at the time of the murders. In fact, one of the individuals who stated that defendant used drugs before committing the crimes also stated that defendant knew exactly what he was doing.

In contrast, the aggravating evidence established that defendant deliberately planned and executed his crimes. Defendant proceeded systematically through the house, shooting every person he encountered to elimi-

nate all possible witnesses. Defendant later boasted that he informed one of his victims, as she pleaded for her life, that she was dead already because she had said his name. Defendant also bragged that he shot one of the victims, after seeing a leg move, to make sure the victim was dead. Trial testimony shows that defendant's actions were premeditated. It also shows that his actions were ruthless beyond belief.

Defendant relies primarily on *Perez*, 148 Ill. 2d 168. In *Perez*, trial counsel did not investigate or present any mitigating evidence, and this court found that counsel was ineffective. In that case, the defendant introduced a substantial amount of proposed mitigating evidence that counsel had failed to present at sentencing. Specifically, counsel failed to introduce evidence showing the defendant's mental history and troubled family background. When compared to this proposed mitigating evidence, the aggravating evidence in *Perez* was much less compelling. The nature of the aggravating and mitigating evidence distinguish this case from *Perez*. See *Coleman*, 168 Ill. 2d at 535-36; *Thomas*, 164 Ill. 2d at 430.

In a related argument, defendant claims that, even if the proposed drug abuse evidence is not sufficient to warrant a new sentencing hearing, the proposed evidence is sufficient to warrant an evidentiary hearing. To warrant an evidentiary hearing, defendant must make a substantial showing that his constitutional rights were violated. We have discussed the materials submitted by defendant and, as noted, defendant has failed to make a substantial showing of prejudice. The circuit court did not err in dismissing this claim without an evidentiary hearing. See *Mahaffey*, 165 Ill. 2d at 465-68 (evidentiary hearing not required in light of the aggravating evidence and the proposed mitigating evidence); *cf. Thompkins*, 161 Ill. 2d at 165-68 (evidentiary hearing required because testimony from numerous individuals well-

acquainted with the defendant would have bolstered mitigating evidence presented at sentencing).

## II. *Ex Parte* Memorandum

Defendant next argues that the circuit court considered improper evidence during sentencing. Specifically, defendant claims that the sentencing judge improperly considered a memorandum from an employee of the Sangamon County sheriff's department and that defense counsel was unaware of this memorandum. Essentially, defendant argues that the sentencing judge's consideration of this memorandum violates due process.

The memorandum in question was prepared by Lieutenant Sam Huston, an administrator at the county jail. Huston was informed by an inmate that defendant was planning to disrupt the courtroom following sentencing. Huston stated that the staff at the county jail had observed increased hostility and apprehension from defendant and that defendant was prone to violent outbursts. Huston recommended that defendant be restrained in handcuffs with a security belt and leg irons during sentencing. Huston also asked that observers in the courtroom submit to a metal detector examination and that a small courtroom be used for the proceedings.

At the time of sentencing, Supreme Court Rule 61(c)(16), which addressed *ex parte* communications, provided in part: "A judge should not accept in any case briefs, documents or written communications intended or calculated to influence his action unless the contents are promptly made known to all parties." (107 Ill. 2d R. 61(c)(16).) According to the memorandum, Huston made his recommendations to the judge after discussing the matter with the State's Attorney's office. The memorandum also indicates that a copy was sent to the State's Attorney's office but not to defense counsel. In his deposition, defense counsel stated that he never received a copy of the memorandum.

The memorandum is clearly an administrative document seeking the sentencing judge's approval for security precautions at the sentencing hearing. It was not submitted as information to be considered in sentencing. As the State correctly notes, a trial judge is responsible for determining what physical restraints are needed to maintain order and to protect the safety of individuals in the courtroom. (*People v. Boose* (1977), 66 Ill. 2d 261, 266; *In re Staley* (1977), 67 Ill. 2d 33, 37-38.) Under former Rule 61, however, defense counsel should have received prompt notice and an opportunity to respond.

Defendant has not made a substantial showing that his right to due process was violated. (*Cf. People v. Nelson* (1974), 58 Ill. 2d 61 (evidentiary hearing held on serious allegation that trial judge had a private meeting with the prosecutor and a key witness, from which the defendant and his attorney were excluded).) It is well established that where a sentencing hearing is conducted before the trial judge instead of a jury, "the trial judge is presumed to consider only competent and relevant evidence in determining sentence." (*People v. Morgan* (1986), 112 Ill. 2d 111, 144; see also *People v. Griffith* (1994), 158 Ill. 2d 476, 497-98; *People v. Johnson* (1992), 149 Ill. 2d 118, 153; *People v. Eddmonds* (1984), 101 Ill. 2d 44, 66.) At no point did the sentencing judge refer to the memorandum or, in any way, indicate that it influenced his sentencing decision. Neither did the prosecutor refer to this memorandum at any point during sentencing. The express findings of the sentencing judge contained in the record show that the judge considered only the proper statutory factors in aggravation and mitigation. Defendant has offered nothing to support his allegation that the sentencing judge improperly considered the memorandum for sentencing purposes.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed. The clerk of this court is directed to enter an order setting Tuesday, March 19, 1996, as the date on which the sentence of death, entered by the circuit court of Sangamon County, shall be carried out. Defendant shall be executed in the manner provided by law (Ill. Rev. Stat. 1991, ch. 38, par. 119—5). The clerk of this court shall send a certified copy of this mandate to the Director of Corrections, to the warden of Stateville Correctional Center, and to the warden of the institution where defendant is now confined.

*Affirmed.*

JUSTICE HARRISON took no part in the consideration or decision of this case.