**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 170288-U

Order filed June 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0288 Circuit No. 15-CF-377 |
| | ) | |
| LAMAREE E. WILSON-NEULEIB, | ) ) | Honorable Gregory G. Chickris, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Justices Peterson and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not err in sentencing defendant to a *de facto* life sentence when it considered his youth and attendant circumstances prior to sentencing; the inclusion of improper victim impact statements was not reversible error.

¶ 2    Defendant, Lamaree E. Wilson-Neuleib, appeals his sentence arguing that the Rock Island County circuit court failed to properly consider his youth and attendant circumstances when it sentenced him to a *de facto* life sentence and that it improperly allowed

nonrepresentatives to make statements and play a tribute video at his sentencing hearing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with first degree murder (720 ILCS 5/9-1(a)(2) (West 2014)) and aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2014)). Count I alleged that defendant, knowingly and without legal justification, performed an act that created a strong probability of death or great bodily harm by shooting Zachary Phillips with a firearm, thereby causing his death. Count II alleged that defendant had committed aggravated battery by discharging a firearm and injuring Erik Roberson. Defendant was 17 years old when the offenses occurred.

¶ 5        Defendant initially pled guilty to both offenses. Following a sentencing hearing, the circuit court sentenced defendant to 50 years' imprisonment for the first degree murder conviction, to be served consecutively to a 10-year term of imprisonment for the aggravated battery conviction. Defendant filed a timely motion to withdraw his plea, and the State did not object.

¶ 6        The matter proceeded to a jury trial. The evidence presented at trial established that on May 20, 2015, Officer Todd Engstrom received a call that there had been shots fired into a vehicle. When he arrived on the scene, he noted that the driver of the vehicle, Phillips, appeared to be critically injured and another person, Roberson, had multiple gunshot wounds and was laying on the ground near the rear of the vehicle. Roberson told Engstrom that defendant shot them.

¶ 7        Matt Merrill testified that on May 19, 2015, he and Roberson met defendant at a gas station to sell him cannabis. The next day, he learned defendant had asked Roberson for more

2

cannabis. Merrill stated that Phillips picked up Roberson and Merrill to drive them to the gas station to meet defendant again. Roberson sat in the front passenger seat, and Merrill sat in the back. After Phillips parked where they intended to meet defendant, Merrill testified he saw defendant approach the driver's side of the vehicle and pull out a firearm. Merrill hid in the back seat and closed his eyes when he heard shots fired. When he opened his eyes, he saw defendant go around to the passenger side and seemed to be searching for something. Merrill testified that he got out of the car and started running. When he returned to the vehicle, he found Roberson and Phillips had both been shot. Merrill identified defendant in court as the person who shot Roberson and Phillips.

¶ 8    Jonathan Genisio, an off-duty K-9 handler, was called to the scene along with a police dog, Luna, to track defendant. Luna alerted near some bushes and a storm drain. Genisio found a small handgun under the bushes. The gun, which police discovered had been purchased by defendant's father, was also determined to have fired the bullets found in Phillips's car, Phillips's body, and Roberson's body. Genisio and Luna continued following the scent until they reached a house where officers discovered an active fire in the backyard, in which clothing and red shoes were being burned. Defendant tried to leave the house, and the officers arrested him. When officers searched defendant upon arrest, they found blue latex gloves and a tissue in the left cargo pocket of his shorts. In the master bedroom, they found an empty Taurus gun case under the bed, as well as ammunition. On the floor in the kitchen, they found a bottle of liquid soap and stainless-steel cleaning wipes.

¶ 9    The jury found defendant guilty of both counts. Defendant filed a motion for new trial, which was denied. A presentence investigation report (PSI) was prepared. Defense counsel retained an expert in mitigation.

3

¶ 10    On March 15, 2017, the court held a sentencing hearing. It confirmed that the parties received an amended PSI for defendant and that neither party had any corrections or additions to make. The State presented both testimonial evidence and victim impact statements.

¶ 11    The evidence presented by the State indicated that defendant had been involved in several fights at the juvenile detention facility before being transferred to the county jail. One incident involved defendant slamming a pizza pan against the back of a counselor's head. Defendant told the counselor that he thought about hitting him in the face but believed that hitting him in the back of the head would do more damage. On the morning of September 6, 2015, defendant walked up to another counselor and knocked the counselor's glasses off his face with his fist. Defendant punched him multiple times while staff members attempted to restrain him. In December 2016, a correctional officer at the county jail gave defendant a razor so he could shave, and when the officer returned to pick up the razor from defendant 30 minutes later, a blade was missing. Another correctional officer testified regarding two fights involving defendant at the jail.

¶ 12    The State also requested leave to present eight victim impact statements. Defendant did not object. The eight individuals that gave a statement included Phillips's best friend, a friend of Phillips's sister, the mother of Phillip's friend, Phillips's great aunt, a friend of Phillips's mother, Phillips's grandfather and grandmother, and his mother. Additionally, Phillips's mother asked to play a tribute video. Defendant did not object. The video played numerous pictures of Phillips alone and with family and friends at various stages of his life, six pictures of a candlelight vigil held after Phillips's death, and two pictures of the funeral procession.

¶ 13    During arguments in aggravation and mitigation, defense counsel submitted a mitigation report and a sentencing memorandum. The mitigation report indicated that at a very young age

4

defendant had been exposed to violence, drugs, and alcohol, leading to defendant having mental health issues, learning deficits, and substance abuse problems. It also highlighted defendant's exposure to violence and his resulting heightened arousal and constant vigilance, which defendant had developed to aid him with surviving his childhood. The report also indicated defendant had a history of psychiatric hospitalizations and services. Defendant's cognitive deficits were attributed to his adolescent use of alcohol and marijuana. The mitigation expert indicated the traits of defendant "diminish[ed] his culpability for the offense he committed as a child" and increased the likelihood of a transformation now and after a release from prison.

¶ 14    The State argued that several factors in aggravation applied in this case, including the fact that defendant's acts caused or threatened serious harm, and the fact that defendant, who had been released from a juvenile detention facility eight days before the instant offense, had a history of prior delinquency. The State requested a total sentence of 70 years' imprisonment.

¶ 15    The court engaged in a discussion with defense counsel regarding whether it was sentencing defendant to a *de facto* life sentence. Defense counsel argued that there were multiple factors for the court to consider if it chose to sentence defendant, a juvenile, to a *de facto* life sentence, including defendant's age, his cognitive development, and circumstances within his home. Counsel argued that defendant's initial sentence of 60 years' imprisonment would have constituted a *de facto* life sentence and that the court must sentence defendant to a lesser term to avoid a constitutional issue. He further argued that defendant's youth, home environment, and cognitive development favored a lesser sentence.

¶ 16    Prior to imposing a sentence, the circuit court stated that it considered both PSIs it received, the financial impact of incarceration, the evidence and information presented by the parties in aggravation and mitigation, including the sentencing memorandum, the victim impact

statements, and the parties' arguments. The court found in aggravation that defendant's conduct caused or threatened harm, defendant had a history of prior delinquency or criminal activity, and the sentence was necessary to deter others. The court specifically stated that it reviewed section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2016)), which pertained to the sentencing of individuals who were under the age of 18 at the time of the offense. The court addressed each factor of the statute in turn. Regarding the factor that required the court to consider defendant's rehabilitative potential and evidence that he could be rehabilitated, the court stated, "We are not really seeing much from the record at this point on that, based upon the recent instances in the jail while he's been incarcerated and his history of delinquency."

¶ 17    The court further described defendant's actions as a premediated "ambush" that demonstrated a need for a long prison sentence. It sentenced defendant to 50 years' imprisonment for murder and a consecutive sentence of 12 years' imprisonment for aggravated battery.

¶ 18    Defendant filed a motion to reconsider sentence. At the hearing, counsel argued that the court did not give enough weight to defendant's age and home and family environment and that it did not consider his potential for rehabilitation at all, given that the length of the court's sentence would prevent defendant from ever rehabilitating himself. He also argued that new case law indicated that defendant's sentence amounted to a *de facto* life sentence and that the court could not sentence defendant as such. The court noted that the cases defendant cited did not hold that the court could not sentence a juvenile to a *de facto* life sentence, but that such a sentence could not be imposed without considering defendant's youth and attendant circumstances. The court further stated:

6

"In the case before us, the Court had the advantage of a new statute, 730 ILCS 5/5-4.5-105, which laid out certain factors in sentencing a person under 18 years of age at the time of the commission of the offense. And the Court took great lengths at the end of the sentencing hearing to go through each of these factors."

¶ 19 After again explaining the factors it considered at sentencing, the court denied defendant's motion to reconsider his sentence. Defendant appealed.

¶ 20                                    II. ANALYSIS

¶ 21                                   A. Sentencing

¶ 22 Defendant first argues that the court failed to properly consider his rehabilitative potential and other juvenile sentencing factors, making his *de facto* life sentence unconstitutional. In the time since this appeal commenced, several cases have been decided further analyzing the proper considerations a court must make before sentencing juveniles to life and *de facto* life sentences, all of which will aid this court when reviewing the case before us now.

¶ 23 A reviewing court will not alter a defendant's sentence without a finding of abuse of discretion by the circuit court. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000); *People v. Jackson*, 375 Ill. App. 3d 796, 801 (2007). There is no abuse of discretion "unless [the sentence] is manifestly disproportionate to the nature of the offense." *People v. Franks*, 292 Ill. App. 3d 776, 779 (1997); see also *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). It is the defendant's burden to show that the court did not consider all the required factors. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11.

¶ 24 To prevail on a *Miller* claim, defendant must show that he was sentenced to a life sentence, or a *de facto* life sentence, and that the sentencing court failed to consider youth and its

7

attendant circumstances when imposing the sentence. *Miller v. Alabama*, 567 U.S. 460; *People v. Buffer*, 2019 IL 122327, ¶ 27. A *de facto* life sentence for a juvenile is any sentence of imprisonment longer than 40 years. *Buffer*, 2019 IL 122327 ¶ 41. Additional factors the court must consider for minors are defendant's age, outside pressures, family and home environment, potential for rehabilitation, circumstances of the offense, participation in offense, prior criminal history, and defendant's ability to participate in his own defense. 730 ILCS 5/5-4.5-105(a) (West 2016). Consideration of the statutory factors at sentencing complies with the factors set forth in *Miller*. See *People v. Holman*, 2017 IL 120655, ¶ 45.

¶ 25    There is no dispute that defendant's 62-year sentence constitutes a *de facto* life sentence under *Buffer*, 2019 IL 122327 ¶ 41. Therefore, we turn to the question of whether the sentencing court properly considered defendant's youth and its attendant circumstances.

¶ 26    Defendant argues that the court failed to properly consider defendant's age, family and home environment, and his rehabilitative potential. However, the court stated at sentencing that it did indeed consider this evidence. Defendant's argument that the court assigned insufficient weight to his rehabilitative potential and other factors, in essence, asks this court to reweigh the sentencing factors. However, this is not the appellate court's role on review. *Jackson*, 375 Ill. App. 3d at 800-01. Further, when mitigating evidence is presented to the court, it is presumed that the court considered it. *People v. Lopez*, 2019 IL App (3d) 170798, ¶ 25. If a defendant argues that the court failed to consider a factor before imposing his sentence, he must make an affirmative showing that the court did not consider the relevant factors. *People v. Vega*, 2018 IL App (1st) 160619, ¶ 66. Defendant cannot make such a showing here, as the court clearly stated otherwise.

¶ 27	At defendant's sentencing hearing, the court discussed each statutory factor in turn and explained its reasoning for how much weight each would receive. There is nothing in the record that indicates the court did not properly consider the mitigating factors defendant presented. To the contrary, there is every indication it considered all the mitigating evidence. Indeed, the court specifically stated that it considered all the relevant factors when reaching its decision.

¶ 28	Defendant also argues that the court placed improper weight on his criminal history and potential for rehabilitation because it considered his behavior in custody while awaiting sentencing. He contends that *Holman* supports his position that the court may not consider defendant's behavior while imprisoned. 2017 IL 120655, ¶ 47. However, *Holman* holds that the court must consider defendant's youth and attendant characteristics at the time of sentencing, which includes the time in custody awaiting trial and the subsequent sentencing hearing for the offense, but it cannot consider the defendant's behavior after sentencing if the matter returns for another sentencing hearing. *Id.* Thus, the court did not err when it considered defendant's behavior while in custody because he had not yet been sentenced.

¶ 29	Defendant next argues that the court may not sentence defendant to a life sentence unless it finds defendant is permanently incorrigible. See *Holman*, 2017 IL 120655, ¶ 46. Defendant appears to argue that a specific finding on the record is necessary before sentencing a juvenile to a life sentence. However, *Miller* does not require a court to make a specific finding of fact regarding a juvenile's incorrigibility. See *Montgomery v. Louisiana*, 577 U.S. 190, 211 (2016). Rather, only a "hearing where 'youth and its attendant characteristics' are considered as sentencing factors is necessary." *Id.* at 210 (quoting *Miller*, 567 U.S. at 465). Indeed, there is no specific language required for a court to impose a life sentence on a juvenile. See *People v. Lusby*, 2020 IL 124046, ¶ 33 n. 2. Moreover, both the United States Supreme Court and the

9

Illinois Supreme Court have further clarified that a court is not required to make a separate finding of permanent incorrigibility on the record before imposing a life sentence, so long as the proper considerations take place regarding defendant's youth and attendant characteristics. See *Jones v. Mississippi*, 141 S. Ct. 1307, 1318-19 (2021); *People v. Wilson*, 2023 IL 127666, ¶ 42. We therefore find that the circuit court's discussion of defendant's youth and attendant characteristics at sentencing satisfies the requirements of *Miller* and section 5-4.5-105(a) of the Criminal Code. 730 ILCS 5/5-4.5-105(a) (West 2016).

¶ 30        Finally, defendant contends that the court erred even if it did consider the statutory factors before sentencing defendant, because it is not clear whether the court intended to impose a *de facto* life sentence. The caselaw clearly establishes that a juvenile defendant may not receive a *de facto* life sentence without the court's consideration of defendant's youth and attendant circumstances. See *Buffer*, 2019 IL 122327 ¶ 27. It does not, however, require that the court *intended* to impose a life sentence, only that if the sentence is longer than 40 years' imprisonment, such factors must be considered. See *id.* Further, the court engaged in a lengthy discussion with defense counsel to determine what length of sentence would be considered a *de facto* life sentence. It is clear from this discussion that the court did indeed contemplate the possibility that the sentence imposed would equate to a *de facto* life sentence and addressed those factors appropriately.

¶ 31                              B. Victim Impact Statements

¶ 32        Defendant next argues that the court abused its discretion by admitting eight victim impact statements at sentencing. Victims of violent crime have a statutory right to present a victim impact statement. 725 ILCS 120/6 (West 2020). The statute provides that:

"[A] representative of the deceased person shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them. *** The court shall consider any impact statement presented along with all other appropriate factors in determining the sentence of the defendant." *Id.* § 120/6(a-1).

A representative is defined as "the spouse, guardian, grandparent, or other immediate family or household member of an injured or deceased person." *Id.*

¶ 33        Defendant contends that the court erred because it considered several statements from individuals who are not considered representatives under the statute. Indeed, the record suggests that, in accepting all the impact statements offered by the State, the court did not comply with the provisions of the Act. However, defendant waived this issue by failing to object or raise it in his postsentencing motion. *People v. Gonzales*, 285 Ill. App. 3d 102, 104 (1996) ("The failure to object to the consideration of allegedly improper evidence during a sentencing hearing and to raise the issue in a post-sentencing motion results in a waiver of the issue on appeal unless the error is deemed plain error."). Defendant acknowledges this but argues that the court may review the issue under plain error. The plain error doctrine allows for review of an improperly preserved issue when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (2) the error is so serious it affected the fairness of the trial and judicial process, regardless of the closeness of the evidence. *People v. Sebby*, 2017 IL 119445, ¶ 48; *People v. Belknap*, 2014 IL 117094, ¶ 48. Generally, the first step in applying the plain error doctrine is to determine whether a clear or obvious error occurred. *Sebby*, 2017 IL 119445, ¶ 49

11

¶ 34    Even if this court were to find that the circuit court erred when it considered these individuals' statements, such a finding would avail defendant to nothing. Defendant's argument is foreclosed by section 9 of the statute, which states that "[n]othing in this Act shall create a basis for vacating a conviction or a ground for relief requested by the defendant in any criminal case." 725 ILCS 120/9 (West 2020); see also *People v. Harth*, 339 Ill. App. 3d 712, 715 (2003) (although the circuit court erred in admitting an impact statement from the victim's mother, section 9 precluded relief on appeal). While the admission of certain victim impact statements may have been in error, appellate relief is clearly precluded under section 9. See *People v. Richardson*, 196 Ill. 2d 225, 229-31 (2001).

¶ 35    Further, the admission of several victim impact statements from nonrepresentatives and the tribute video did not amount to a due process violation warranting reversal under second prong plain error. In general, "[d]ue process bars the introduction of evidence that is so unduly prejudicial that it renders the sentencing hearing fundamentally unfair." *Harth*, 339 Ill. App. 3d at 715. However, it is well established that where a sentencing hearing is conducted before the court rather than a jury, it is presumed the court considered only competent and relevant evidence in determining its sentence. *People v. Ashford*, 168 Ill. 2d 494, 508 (1995). Defendant cannot show that the court considered any of the irrelevant evidence before it. When rendering its decision, the court focused on defendant's criminal history, the seriousness of the offense and the element of deterrence. Thus, defendant cannot prove he was prejudiced by the inclusion of statements by nonrepresentatives or the tribute video.

¶ 36    Defendant briefly argues that his counsel was ineffective for failing to object to the State's presentation of eight victim impact statements and the tribute video at sentencing. To prevail on a claim of ineffective assistance of counsel, "the defendant must demonstrate that

12

counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Petrenko*, 237 Ill. 2d 490, 496-97 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). As discussed above, we presume that the court used only the relevant evidence when sentencing defendant. *Supra* ¶ 35. Defendant has not rebutted this presumption; therefore, he cannot prove prejudice under the theory of ineffective assistance of counsel.

¶ 37                                                III. CONCLUSION

¶ 38            The judgment of the circuit court of Rock Island County is affirmed.

¶ 39            Affirmed.