NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230529-U

NO. 4-23-0529

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 25, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Whiteside County |
| DARRELL R. MORROW, | ) | No. 22MT91 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer M. Kelly, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2  Defendant, Darrell R. Morrow, appeals his conviction for driving with a revoked license (625 ILCS 5/6-303(a) (West 2022)). On appeal, the Office of the State Appellate Defender (OSAD) was appointed to represent him. OSAD now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967). The record contains OSAD's notice of filing and proof of service on defendant. To date, defendant has not filed a response. In OSAD's brief to support the motion to withdraw, OSAD claims there are no meritorious issues to be raised on appeal. After reviewing the record and OSAD's motion, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 3                    I. BACKGROUND

¶ 4 On January 28, 2022, defendant received a citation for driving while his license was revoked. Defendant appeared before the trial court *pro se* on four occasions before the public defender was appointed in August 2022. Thereafter, defendant, through counsel, filed a speedy trial demand and a motion for a list of the State's witnesses and production of any confession. The motion for a list of witnesses specifically requested a copy of any written confession or statements made by defendant to any law enforcement officer. The matter proceeded through several pretrial conferences until May 2023, when defendant filed two motions *in limine*, which sought to bar evidence of other crimes or bad acts and prohibit any testimony regarding his prior convictions. The State also filed two motions *in limine* seeking to prohibit at trial any argument or evidence pertaining to possible penalties for the charged offense or any argument or evidence pertaining to defendant's mental state given the offense was a strict liability offense. Following a hearing, the court granted all motions *in limine*. The matter proceeded to a jury trial in June 2023.

¶ 5 During *voir dire*, the trial court asked the prospective jurors as a group to individually raise their hand if they did not understand or accept the following principles: (1) defendant is presumed innocent of the charges against him, (2) the State must prove defendant guilty beyond a reasonable doubt, (3) defendant was not required to offer any evidence on his behalf, and (4) defendant's failure to testify cannot be held against him. None of the prospective jurors raised their hands.

¶ 6 Defense counsel posed several questions to the prospective jurors related to police-worn body cameras. After the jury was impaneled, prior to testimony and outside the presence of the jury, the trial court noted it had heard

"information with regard to what I would characterize as inadvertent or perhaps purposeful destruction of video, shall I say. That does not go to whether this offense was committed or not committed. If I hear any question with regard to going down that road—I will say, if I hear an objection it will be sustained unless I have some good reason that might go towards the weight of the evidence in this case."

Defense counsel commented the only evidence to be presented was the citing officer's testimony and the fact that the dash-camera video no longer existed would only go toward the credibility of the officer's testimony. The trial court confirmed no motion *in limine* was filed regarding the dash-camera video. Defense counsel argued the "question of whether the video currently exists goes to the credibility of the witness'[s] testimony." The court stated it would be premature to rule on such a motion given it had not heard the officer's testimony whether the dash-camera video existed.

¶ 7        Defense counsel orally moved to dismiss the case because the dash-camera video no longer existed. The trial court stated it was "not the appropriate motion for this time." Defendant interjected, stating he wanted to appeal. The court stated the case was not appealable at that point in time. Defendant interrupted the court, stating his disagreement. The court admonished defendant to only speak through his counsel.

¶ 8        At trial, Illinois State Police Trooper Wayde Smith testified that on January 28, 2022, at approximately 6:38 p.m., he was stationary in his police vehicle at milepost 25 on Interstate 88 when he observed a blue BMW with window tint that appeared darker than the legal limit. He was unable to see inside the vehicle due to the window tint. Smith then began to follow the BMW and conducted an inquiry into the BMW's registration through the Law Enforcement

Agencies Data System (LEADS). The LEADS inquiry revealed the driver's license of the registered owner was revoked. Smith initiated a traffic stop based on the window tint and the revoked driver's license. Defendant, the registered owner, was driving and was the sole occupant of the vehicle. Smith identified defendant as the driver in open court. According to Smith, defendant told him he believed his driver's license was not valid. Smith conducted a follow-up inquiry with Illinois State Police telecommunications, which confirmed the revocation.

¶ 9 The State showed Smith a document he recognized and confirmed as defendant's driving abstract, which corroborated that defendant's driving privileges had been revoked on January 28, 2022. The trial court allowed the State's motion to admit it into evidence and to publish it to the jury. Defendant did not object. The admitted document included certification from the Office of the Illinois Secretary of State.

¶ 10 Smith testified he issued defendant a citation for driving while his license was revoked. On cross-examination, Smith stated although he had not been issued a body camera to wear by the Illinois State Police, his patrol vehicle was equipped with a dash camera that automatically begins recording when he initiates his emergency lights. Smith believed his dash camera was properly functioning on January 28, 2022. Smith confirmed the dash-camera video no longer existed.

¶ 11 On redirect examination, Smith explained the dash-camera video for certain events, such as driving with a revoked license, was only stored on the Illinois State Police server system for one year. He also confirmed he never received any request by either party to preserve the dash-camera video.

¶ 12 The State rested and the jury was excused. Defense counsel indicated defendant would rest and not present any witnesses. The trial court inquired with defendant whether he

wanted to testify. The court repeatedly asked defendant if he had adequate time to discuss whether he wanted to testify with his attorney or if he would like more time. Defendant repeatedly ignored the court's questions and instead discussed the issue of being pulled over because his windows were tinted. Eventually, the court stated defendant's "continued evasion" of its questions on the issue of his testimony would be understood "as his refusal to testify and that he has had ample time to consider whether to testify or not with counsel." Defense counsel stated, "I have asked [defendant] outside the courtroom if he needs more time and he answered me, no. And if he wants to testify, and he answered me, no."

¶ 13   The jury found defendant guilty of driving while his license was revoked.

¶ 14   Defendant did not file a posttrial motion and the matter immediately proceeded to sentencing. The State offered defendant's criminal history, which included a conviction for driving under the influence (DUI) in 2006, for which defendant received court supervision. However, his supervision had been revoked in April 2008. Defendant was convicted of another DUI in February 2021, which was the basis for his current license revocation. He also had convictions for aggravated criminal sexual assault in 1990, domestic battery in 2002, and five convictions for resisting a peace officer from 2006 through 2014. The State recommended defendant be sentenced to 10 days in the county jail as required by statute. Defense counsel recommended defendant be sentenced to 300 hours of community service. Defendant interjected that he preferred jail. The trial court sentenced defendant to 10 days in jail with a report date of July 10, 2023, at 2 p.m. The court admonished defendant of his appeal rights but failed to inform him that if he wished to challenge his sentence, he must first file a motion to reconsider his sentence. No postsentencing motion was filed.

¶ 15   This appeal followed.

¶ 16                                    II. ANALYSIS

¶ 17            On appeal, OSAD considered raising whether (1) the evidence was sufficient to

prove defendant guilty of driving while his license was revoked beyond a reasonable doubt,

(2) the trial court improperly admonished potential jurors pursuant to Illinois Supreme Court

Rule 431(b) (eff. July 1, 2012), (3) defense counsel rendered ineffective assistance by failing to

request dash-camera evidence from defendant's stop or file any pretrial motion for sanctions,

(4) defense counsel rendered ineffective assistance by failing to file a motion to suppress

evidence, (5) the court erred by admitting his certified driving abstract or defense counsel

rendered ineffective assistance by failing to object to its admission, (6) defendant was improperly

denied his right to testify, and (7) the court failed to comply with Illinois Supreme Court Rule

605 (eff. Oct.1, 2001) or abused its discretion when sentencing defendant. OSAD concluded

these issues were without arguable merit and moved to withdraw. We review each issue in turn.

¶ 18                          A. Sufficiency of the Evidence

¶ 19            First, OSAD reviewed whether the evidence was sufficient to prove defendant

guilty beyond a reasonable doubt of driving while his license was revoked and concluded the

evidence was sufficient. We agree.

¶ 20            When examining the sufficiency of the evidence, we must determine "whether,

after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in

original and internal quotation marks omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony,

resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the

evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal

conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 21 Here, the State had to prove (1) defendant was driving a motor vehicle on a highway in Illinois (2) at a time when his license or privilege to drive was revoked. 625 ILCS 5/6-303(a) (West 2022); *People v. Jackson*, 2013 IL 113986, ¶ 16. The evidence from the trial showed defendant was driving on Interstate 88 on January 28, 2022, when Smith initiated a traffic stop. Defendant's certified driving abstract showed his driver's license was revoked on January 28, 2022. There was no evidence to contradict Smith's testimony or defendant's driving abstract. The testimony of a single, credible witness is sufficient to support a conviction. *People v. Swenson*, 2020 IL 124688, ¶ 36. Therefore, when viewed in a light most favorable to the prosecution, we find the evidence was sufficient for the jury to reasonably conclude beyond a reasonable doubt that defendant was driving on a highway in this state at a time when his driver's license was revoked.

¶ 22 B. Remaining Issues and Plain-Error Doctrine

¶ 23 OSAD notes defendant neither filed a posttrial motion nor made a contemporaneous objection to any of the remaining potential issues. *In re M.P.*, 2020 IL App (4th) 190814, ¶ 44 ("A defendant forfeits an issue for purposes of appellate review by failing to object to the alleged error or raise it in a written posttrial motion."). Therefore, OSAD analyzed those issues, aside from defendant's potential ineffective-assistance-of-counsel claims, under the plain-error doctrine.

"Under the plain-error doctrine, this court will review forfeited challenges when:

(1) a clear or obvious error occurred and the evidence is so closely balanced that

the error alone threatened to tip the scales of justice against the defendant; or (2) a clear or obvious error occurred, and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Taylor*, 2011 IL 110067, ¶ 30. The first step in a plain-error analysis is to determine whether any error occurred at all. *People v. Hammons*, 2018 IL App (4th) 160385, ¶ 41.

¶ 24                                    1. *Rule 431(b)*

¶ 25         OSAD considered whether the trial court committed reversible error by improperly admonishing prospective jurors pursuant to Rule 431(b), which requires the court to ask each prospective juror:

> "whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her." Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

OSAD noted the court asked prospective jurors if they understood and accepted that "the defendant's failure to testify cannot be held against him in any way," rather than if defendant does not testify, it cannot be held against him. OSAD noted the language the court used was from an older version of Rule 431(b) prior to its most recent amendment. See Ill. S. Ct. R. 431(b) (eff. May 1, 2007). OSAD also noted violations of Rule 431(b) are not cognizable under the second prong of the plain-error doctrine. *People v. Birge*, 2021 IL 125644, ¶ 24 ("[A] violation of Rule 431(b) is not a second-prong, structural error that requires automatic reversal under a

plain-error analysis."). Therefore, even if the court's incorrect phrasing of Rule 431(b) arguably amounted to error, defendant would be required to show the evidence was closely balanced under a first-prong analysis.

¶ 26　　　　Here, the evidence was not closely balanced. The only evidence presented at trial was the testimony of Trooper Smith and defendant's certified driving abstract. The evidence overwhelmingly showed defendant was driving at a time when his license was revoked. There was no contradictory evidence. *People v. Belknap*, 2014 IL 117094, ¶ 50 (stating under a first-prong analysis, "a reviewing court must undertake a commonsense analysis of all the evidence in context"). Therefore, we need not address whether the trial court's Rule 431(b) admonishments constituted error because defendant could not establish the evidence was closely balanced to support reversal under the plain-error doctrine.

¶ 27　　　　　　　　2. *Ineffective Assistance Regarding the Dash-Camera Video*

¶ 28　　　　OSAD analyzed whether defendant's trial counsel rendered ineffective assistance by failing to request the dash-camera video or file a pretrial motion for sanctions when the State failed to preserve the dash-camera video.

¶ 29　　　　"A claim of ineffective assistance of counsel is evaluated under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Henderson*, 2013 IL 114040, ¶ 11. "Under this test, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* "A defendant's failure to establish either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel." *Id.* On appellate review, trial counsel's conduct is presumed to be the product of sound trial strategy. *People v. Houston*, 226 Ill. 2d 135, 144 (2007). Counsel's

performance is only deficient when it is objectively unreasonable. *People v. Domagala*, 2013 IL 113688, ¶ 36. To show prejudice, defendant must demonstrate a reasonable probability that the outcome of the proceeding would have been different, but for counsel's deficient performance. *Id.*

¶ 30 Illinois Supreme Court Rule 412(a)(i)-(ii) (eff. Mar. 1, 2001) requires the State to disclose to defense counsel any recorded statements "upon written motion of defense counsel." Here, defendant made no such written request for Trooper Smith's dash-camera video. However, nothing in the record suggested the dash-camera video contradicted Smith's testimony or that it would have had any exculpatory value. The standard set forth in *Strickland* requires a defendant to "affirmatively prove" prejudice resulted from trial counsel's error. *Strickland*, 466 U.S. at 693. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* " 'Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced.' " *People v. Johnson*, 2021 IL 126291, ¶ 55 (quoting *People v. Patterson*, 2014 IL 115102, ¶ 81).

¶ 31 Therefore, even if defendant could argue trial counsel was objectively unreasonable for failing to request the video, he cannot prove it would have had a reasonable probability of changing the outcome of his trial without speculating what the video would have shown. Because defendant cannot satisfy the prejudice element of the *Strickland* standard, he cannot show counsel was ineffective for failing to file a written discovery request for the video. *People v. Ashford*, 168 Ill. 2d 494, 502 (1995) ("[I]f [a] defendant fails to show prejudice, we need not address the adequacy of trial counsel's performance.").

¶ 32 Regarding whether the failure to preserve the video and trial counsel's failure to move for sanctions amounted to ineffective assistance, "[t]he destruction or loss of evidence by

the State violates due process only under certain circumstances. First, we must determine if the evidence was material and exculpatory or only 'potentially useful.' " *People v. Sandridge*, 2020 IL App (1st) 173158, ¶ 22. This issue similarly fails because there is no indication from the record the dash-camera video was exculpatory or, for that matter, even potentially useful for defendant. If we assume, *arguendo*, the video was potentially useful, defendant must show the loss of the video was due to bad faith on the part of the State. *Id.* As OSAD notes, the Illinois State Police were only required by law to preserve Smith's dash-camera video for 90 days unless otherwise ordered by a court or for evidentiary purposes. 20 ILCS 2610/30(f) (West 2022). Smith testified dash-camera videos in cases like defendant's were routinely preserved for one year, which is beyond the statutory minimum period required. However, defendant's trial did not commence until nearly a year and a half after his original citation. Because no party requested the video, it was eventually deleted from the Illinois State Police server. Nothing in the record suggests the video was deleted in bad faith; rather, it was simply automatically purged from the Illinois State Police system because it was not requested. A motion for sanctions without evidence of bad faith would have been futile and cannot be the basis for ineffective assistance. *People v. Glass*, 232 Ill. App. 3d 136, 152 (1992) ("Defense counsel is not required to make futile motions or objections in order to provide effective assistance.").

¶ 33　　　　　　　　3. *Ineffective Assistance Regarding Motion to Suppress*

¶ 34　　　　　　OSAD next considered whether trial counsel was ineffective for failing to file a motion to suppress evidence based on Smith lacking reasonable suspicion to initiate a traffic stop. When the trial court inquired whether he wished to testify, defendant demonstrated considerable frustration with the court because he believed he was stopped by Smith because his windows were illegally tinted. This court, in *People v. Dunmire*, 2019 IL App (4th) 190316,

- 11 -

specifically addressed the issue of reasonable suspicion and traffic stops related to tinted windows. Indeed, a police officer must have reasonable suspicion the vehicle committed a traffic violation prior to initiating a traffic stop on the vehicle. *Id.* ¶ 72. In *Dunmire*, we stated reasonable, articulable suspicion regarding window tint required the police officer to "articulate (1) the general differences between legally and illegally tinted windows and (2) the facts that made the particular window appear illegally tinted under particular circumstances in which it was viewed." *Id.* ¶ 86.

¶ 35    As we stated earlier, defendant must show his trial counsel's failure to file a motion to suppress evidence from an illegal stop was both deficient and prejudicial to successfully demonstrate an ineffective assistance claim. To establish "prejudice where an ineffectiveness claim is based on the failure to file a suppression motion, the defendant must show that a reasonable probability exists both that the motion would have been granted, and that the result of the trial would have been different had the evidence been suppressed." *Henderson*, 2013 IL 114040, ¶ 12.

¶ 36    While defendant's consternation rests on Smith stopping him for illegally tinted windows, the evidence from the trial shows this is not true. Smith testified he initially began following defendant because he believed defendant's windows were illegally tinted but did not initiate a traffic stop on this basis alone. Smith subsequently ran defendant's registration through LEADS and learned the registered owner of the vehicle, defendant, had a revoked license. Smith confirmed it was because of the window tint and the revoked license that he initiated a traffic stop. Driving while one's license is revoked is unquestionably a valid basis to initiate a traffic stop. 625 ILCS 5/6-303(a) (West 2022). Therefore, defendant's traffic stop was not predicated on window tint alone, and defendant cannot show prejudice. Here, again, a motion to suppress

would have been futile. See *Glass*, 232 Ill. App. 3d at 152 ("Defense counsel is not required to make futile motions or objections in order to provide effective assistance.").

¶ 37                    4. *Certified Driving Abstract*

¶ 38          OSAD next considered whether the trial court's admission of defendant's certified driving abstract without a proper foundation was error or whether trial counsel's failure to object to its admission amounted to ineffective assistance. This court addressed both of these issues regarding certified driving abstracts in *People v. Schwandt*, 2022 IL App (4th) 200583. In *Schwandt*, we noted certified driving abstracts are admissible evidence as an exception to the hearsay rule and by statute. *Id.* ¶ 12 (citing Ill. R. Evid. 803(8) (eff. Sept. 28, 2018); 625 ILCS 5/2-123(g)(6) (West 2018)). The fact is the ordinary rules regarding foundation do not apply for certified driving abstracts and, even if trial counsel had objected, it would have been futile. Therefore, defendant cannot demonstrate error, let alone plain error, and trial counsel's failure to object did not amount to ineffective assistance. *Id.* ¶¶ 16, 19.

¶ 39                    5. *Defendant's Right to Testify*

¶ 40          OSAD then considered whether defendant affirmatively declined to exercise his right to testify. When the trial court inquired whether he wished to testify, defendant refused to answer. OSAD correctly pointed to our supreme court, which stated:

> "Illinois courts have consistently found, however, that when a defendant contends on appeal that he was precluded from testifying at trial, his conviction cannot be reversed on the basis that he was prevented from exercising that right unless he contemporaneously asserted his right to testify by informing the trial court that he wished to do so." *People v. Smith*, 176 Ill. 2d 217, 234 (1997).

When the trial court inquired with defendant about his right to testify, defendant never expressly asserted his desire to testify. In fact, the record positively demonstrated through trial counsel that defendant had expressed he did not wish to testify. Therefore, defendant cannot demonstrate error, let alone plain error. *In re H.C.*, 2019 IL App (1st) 182581, ¶ 45 ("Without a clear or obvious error, there can be no plain error.").

¶ 41                                                6. *Sentencing*

¶ 42          Lastly, OSAD considered whether the trial court's incomplete admonishment pursuant to Rule 605 entitled defendant to any sentencing relief or whether the court abused its discretion when sentencing him. Rule 605(a) requires the court to admonish a defendant after being sentenced to imprisonment of his right to appeal and the need to file a motion to reconsider his sentence prior to filing a notice of appeal. Ill. S. Ct. R. 605(a)(3)(B) (eff. Oct. 1, 2001). OSAD noted the court in this instance properly admonished defendant of his right to appeal but did not admonish him he needed to first file a motion to reconsider should he wish to appeal the sentence.

¶ 43          "[W]here a defendant is given incomplete Rule 605(a) admonishments regarding the preservation of sentencing issues for appeal, remand is required only where there has been prejudice or a denial of real justice as a result of the inadequate admonishment." *People v. Henderson*, 217 Ill. 2d 449, 466 (2005). Defendant was convicted of driving while his license was revoked, which is a Class A misdemeanor. 625 ILCS 5/6-303(a) (West 2022). Defendant was subject to a sentence of less than one year in jail as a result. 730 ILCS 5/5-4.5-55(a) (West 2022). Because defendant's license had been revoked due to a prior DUI conviction, his statutory mandatory minimum sentence required either 10 days in jail or 30 days of community service. 625 ILCS 5/6-303(c)(1) (West 2022). When defendant's trial counsel sought community service,

defendant interjected that he preferred 10 days in jail. Accordingly, defendant was given the minimum sentence required by law in the manner he requested. Given defendant received the minimum sentence in the manner he desired, we find he was not prejudiced, nor was he denied real justice. Additionally, as OSAD correctly notes, defendant would have already served his jail sentence in July 2023. See *People v. Dawson*, 2020 IL App (4th) 170872, ¶ 8 ("It would be impossible to grant effectual relief from a sentence that the defendant already has served.").

¶ 44       We also find defendant's sentence was not an abuse of discretion. "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54). A reviewing court affords great deference to a trial court's sentencing judgment because "having observed the defendant and the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. When a defendant's sentence was within the permissible range, we begin with the presumption the sentence was proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46.

¶ 45       Here, defendant was not only given a sentence within the permissible range, but he was given the minimum sentence of 10 days in jail as required by law. 625 ILCS 5/6-303(c)(1) (West 2022); see *People v. Miller*, 202 Ill. 2d 328, 336 (2002) ("The legislature's

discretion necessarily includes the power to prescribe mandatory sentences, even if these mandatory sentences restrict the judiciary's discretion in imposing sentences."). Additionally, defendant requested the jail term as opposed to community service. Therefore, we find the trial court did not abuse its discretion when sentencing defendant.

¶ 46                                    III. CONCLUSION

¶ 47            For the reasons stated, we conclude there are no issues of arguable merit defendant can raise on appeal. Accordingly, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 48            Affirmed.